**EXHIBIT D**

## DEED OF TRUST NOTE
### (Balloon Note)

$ 100,000.00                                              Date: December 21, 1998

FOR VALUE RECEIVED, the undersigned ("Borrower") promises to pay Amelia T. Interdonato, or order, the principal sum of One Hundred Thousand and No/100 Dollars ($100,000.00), with interest on the unpaid principal balance from the date of this Note until paid, at the rate of Ten percent (10.0%) per annum, payable at such place as Note holder may designate, in writing, mailed or delivered to Borrower as follows:

Payable in consecutive monthly installments of One Thousand Seventy-four and 71/100 Dollars ($1074.71) each on the 21st day of every month, beginning January 21, 1999. Such indebtedness shall continue until the entire indebtedness evidenced by this Note is fully paid, except that any remaining indebtedness, including accrued interest, if not sooner paid, shall be due and payable on December 21, 2003.

Each installment when so paid, is to be applied first to the payment of interest on the amount of principal remaining unpaid, and the balance thereof to be credited to principal.

Borrower may prepay the principal amount outstanding in whole or in part without penalty. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent installments or change the amount of such installments, unless Note holder shall otherwise agree in writing.

It is understood and agreed that the transfer of any interest in the property described in the Deed of Trust shall be a default in this Note and Note holder shall have the option to accelerate the entire indebtedness at once.

If any payment is not received by the Noteholder on the date such payment is due, the Borrower shall pay a late charge of five percent (5%) of the total amount of the delinquent payment, but in no event shall this late charge be assessed so as to exceed the lawful rate of interest.

If any payment under this Note is not paid when due and remains unpaid after a date specified by a notice to maker, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable at the option of Note holder. The date specified shall not be less than ten (10) days from the date such notice is' mailed. Note holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance.

This instrument is to be construed in accordance with the laws of the District of Columbia.

In the event of any default in the payment of this Note, Borrower agrees to pay reasonable attorney's fees and other costs of collection.

Borrower an all endorsers and guarantors hereof waive notice of maturity, presentment, protest and notice of protest, notice of non-payment and dishonor.

This Note shall be the joint and several obligation of all Makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns.

Any notice to Borrower or Lender shall be given by mailing such notice by certified mail addressed to Borrower at 1835 N. Culpepper Street, Arlington, Virginia 22207 or to Note Holder at the address stated in the first paragraph of this Note, or at such other address as may have been designated by written notice by Borrower or Lender.

This Note incorporates by reference the terms and provisions of a Deed of Trust made by Borrower on this date securing Note holder.

*05 1162*

FILED

JUN - 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

If any ~~sion~~ of this Note or the Deed of Trust secur~~ ~~the indebtedness is held to be illegal, i~~...~~ ~~void~~ or unenforceable as written, it is the in~~...~~ the Borrower and Note Holder that such provision be effective to the fullest extent that is ~~legal~~, valid and enforceable and the remaining provisions of the Note and Deed of Trust be construed as if such illegal, invalid, void or unenforceable provision were not contained therein. If interest or any loan charges provided for in the Note or Deed of Trust exceed permitted limits then (I) the loan charge shall be reduced by the amount necessary to attain the permitted limits and (2) any sums collected which exceed the permitted limits will be refunded to Borrower by direct payment or reduction of the principal balance of the indebtedness at the option of Note Holder.

_____ (SEAL)
EMMEBET FIKRU          Borrower

_____ (SEAL)
TESFAY GUEBRE          Borrower

THIS IS TO CERTIFY that this is the Note described in a Deed of Trust to Anthony P. Interdonato, Trustee, and bearing even date herewith, representing a valid lien against real property located in the District of Columbia, which has the property address of 527-529 and 531 8th Street, S.E. Washington, D.C. said Deed of Trust and Note having been executed in my presence.

_____
Nancy L. Gusman    Notary Public

My commission expires: 01/01/01

———————————————— [Space Above This Line For Recording Data] ————————————————

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on    December    21st
19 98 . The grantor is   Fikru, Emmebet & Guebre, Tesfay
("Borrower"). The trustee is  Anthony P. Interdonato
("Trustee"). The beneficiary is
Amelia T. Interdonato                                          , which is organized and existing
under the laws of                                  , and whose address is 12301 Hatton Point Road
Fort Washington, Md 20744                                                      ("Lender").
Borrower owes Lender the principal sum of    One Hundred Thousand & 00/100
Dollars (U.S. $ 100,000.00      ). This debt is evidenced by Borrower's note
dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not
paid earlier, due and payable on    December 21, 2003                        . This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and
the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following
described property located in the District of Columbia:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of    527 , 529 & 531 8th Street, SE with
Washington, DC                               ("Property Address");
                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or
hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the
foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant
and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants
and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

DISTRICT OF COLUMBIA—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT                Form 3009 12/87

the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

8. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

12. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

13. **Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 17.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraphs 13 or 17.

**17. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.0 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**20.** Lender in Possession. Upon acceleration under paragraph 19 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

**21.** Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**22.** Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording in a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**23.** Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ 2-4 Family Rider

☐ Graduated Payment Rider      ☐ Planned Unit Development Rider

☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
EMMEBET FIKRU      —Borrower

_____ (Seal)
TESFAY GUEBRE      —Borrower

[Space Below This Line For Acknowledgment]

State of Maryland
County of Montgomery ss:

I, Nancy Gusman , a Notary Public in and for the aforesaid jurisdiction

do hereby certify that Emmebet Fikru & Tesfay Guebre

personally known to me as the person(s) who executed the foregoing instrument bearing date of 21st day of December , 19 98 , personally appeared before me in said District and acknowledged said instrument to be act and deed, and that executed said instrument for the purposes therein contained.

Witness my hand and official seal this 21st day of December , 19 98

_____ (Seal)
Nancy Gusman, Notary Public, aforesaid jurisdiction