EXHIBIT I

# HARPS & SCALLAN, LLC

J. Andrew Scallan
Richard R. Harps, MAI, CRE

Stephen Brennan
Robert Herrema

# SUMMARY REPORT

## OF A

# COMPLETE APPRAISAL

## OF

## 527-29 EIGHTH STREET, SE
## WASHINGTON, DC 20003
## (SQUARE 903, LOT 819)

Valued as of

## NOVEMBER 6, 1998

Prepared for

## FIRST LIBERTY NATIONAL BANK
## C/O MR. ROBERT COWDREY, VICE PRESIDENT
## 1146 19TH STREET, NW
## WASHINGTON, DC 20036

Prepared On

### November 13, 1998

*05 1162*

FILED

REAL ESTATE APPRAISAL & ADVISORY SERVICE

1522 K Street, N.W. • Suite 720 • Washington, DC 20005 • Tel . (202) 682-9451 • Fax (202) 682-1579  JUN - 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# SUMMARY REPORT OF A COMPLETE APPRAISAL

This is a Summary Report of a Complete Appraisal which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice. As such, it presents only summary discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated below. The appraiser is not responsible for unauthorized use of this report.

| | |
|---|---|
| **Client:** | FIRST LIBERTY NATIONAL BANK<br>C/O MR. ROBERT COWDREY, VICE PRESIDENT<br>1146 19TH STREET, NW<br>WASHINGTON, DC 20036 |
| **Appraiser:** | ROBERT HERREMA<br>1522 K STREET, NW, SUITE 720<br>WASHINGTON, DC 20005 |
| **Subject:** | 527-29 EIGHTH STREET, SE<br>WASHINGTON, DC 20003 |
| **Legal Description:** | SQUARE 903, LOT 819 |

## Purpose of the Appraisal

The purpose of the analysis is to estimate the "as is" market value of the fee simple interest, subject to the existing leases on the property, and the assumptions and limitations set forth herein, including but not limited to environmental and ADA considerations. For the purposes of this analysis, market value is defined in the "Federal Register", Vol. 55, No. 165, August 1990, section 34.42 (f), as:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

(1) Buyer and seller are typically motivated;

(2) Both parties are well informed or well advised and acting in what they consider their own best interests;

(3) A reasonable time is allowed for exposure in the open market;

(4) Payment is made in terms of cash in US dollars or in terms of financial arrangements comparable thereto; and

(5) The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

The value estimated in the report is a cash equivalent value (cash to the seller with the purchaser obtaining typical market financing).

"As is" is the subject in its physical and developable state on the date of valuation.

## Intended Use

The intended use of this report is for loan underwriting purposes.

The intended user of this report is the client, First Liberty National Bank.

## Scope of Appraisal

This summary report is based on an appraisal utilizing the Sales Comparison Approach (comparing recent sales of similar properties in the neighborhood) and the Income Approach (utilizing income and expense data from similar properties in the neighborhood). In preparing this appraisal, the appraiser

- inspected the subject site and interior of the improvements.
- gathered the information on comparable improved sales; inspected the exteriors of the properties used as comparables and verified each sale when possible.
- gathered comparable rental rates for competing space.
- applied the Sales Comparison Approach and the Income Approach to arrive at an indication of value.
- reconciled the approaches and derived a final value.

The Cost Approach was not used in this case since the market does not generally consider new construction as an alternative due to the lack of available land in the subject's neighborhood. Therefore, the property has been valued utilizing only the Sales Comparison and Income Approaches, which is consistent with current market practices. This summary report is a brief recapitulation of the appraiser's data, analyses, and conclusions. Supporting documentation is retained in the appraiser's file.

## Interest Valued

Fee simple value.

## Effective Date of Value/Date of Report

The effective date of value is November 6, 1998, the last date on which the property was inspected. The report date is November 13, 1998.

## Client

The client in this appraisal is First Liberty National Bank.

## Identification of Personal Property or Other Than Real Property

No personal property or other than real property is appraised in this report.

## History of the Property

The subject and the adjoining property at 531 8th Street (Lot 820) were purchased by the owners for $325,000 with the deed being recorded on September 5, 1990. Approximately 85% of the first floor of subject has been leased for use as a convenience store. There is a small portion of the front that had been used as a carry-out business. The second floor of the building, which is partial, is an apartment leased for residential purposes that also includes the partial second floor over 531 8th Street. It is our understanding that the current convenience store tenant has contracted to purchase the subject property known as 527-529 8th Street.

REAL ESTATE APPRAISAL & ADVISORY SERVICES

## DESCRIPTION OF REAL ESTATE APPRAISED

### District Economic Data

Population. The District's population has declined sharply in the 1990s, falling from 606,900 residents in 1990 to an estimated 528,900 as of December 1997. While the loss rate slowed in 1997, demographers say it is too early to predict an end to the exodus that has depressed the city's economy and weakened the tax base.

Employment. While the number of jobs in the Washington area (MSA) increased from 2.14 million in 1992 to 2.29 million in 1997, the District lost 57,600 jobs during the period. The losses were mainly due to federal and District government downsizing.

On the plus side, the government payroll reductions, which got underway in 1994, seem to be coming to an end. Economic conditions in the city are improving, which should stimulate job creation and reduce the city's unemployment rate, which is three times higher than in the suburbs.

Housing and Real Estate. Sales of new and existing homes went up by 31% in the District in 1997. The recovery in the housing market has carried over to 1998, helped by special tax incentives enacted by Congress last year. Compared to a year ago, sales of existing homes in the District went up by 23% during the first quarter of 1998. Office construction and the renovation of existing buildings have surged recently, fueled by rising rents, a paucity of construction in recent years, and growing demand. The revived office market has driven the vacancy rate down to 7.5% as of June 1998. Much of the development activity is centered in the long dormant and rundown east end of downtown, where the new MCI sports arena is located.

Summary. The business outlook has improved markedly in 1998. Positive signs include renewed investor interest, robust home sales, a revived office market, and a dramatic turnaround in the city government's financial prospects. For the first time in years, the D.C. government ran a surplus in fiscal 1997 and further budget surpluses are forecast for the years ahead, mainly due to reductions in spending, tightened tax collection procedures, and a stronger economy. Local officials recently approved plans for a new $650 million convention center. Also downtown, a $38.5 million business improvement district, or BID, has been formed to improve the area's safety and cleanliness. In the near future, business tax changes will be considered in an effort to make the District more competitive with its surrounding, suburban jurisdictions.

### Neighborhood Description

The subject is located in the historic Capitol Hill neighborhood of the District; one which experienced gentrification from the 1960s to the 1980s with a considerable increase in real estate values. However, property values in the area have suffered somewhat in recent years because, according to local newspaper reports, many middle class residents are moving to the suburbs due to their concern about crime, increasing taxes and a below standard school system. Capitol Hill is an attractive neighborhood of low density townhouses, mainly nineteenth century, with a generally restored area of approximately twelve blocks north to south and twelve blocks running east to west. The dominant housing type in Capitol Hill is two-and three-story single family homes and two-family flats. There are several blocks of commercial development along Pennsylvania Avenue, Seventh Street, and Eight Street, all in the southeast quadrant as well as along Massachusetts Avenue, NE stretching five to six blocks southeast from Union Station. Union Station is located directly north of the congressional office complex. Subject is located at 527 Eighth street, approximately one mile southeast of the U S Capitol and one block north of the Marine Commandments residence.

Excellent bus transportation serves the neighborhood and there are several nearby MetroRail stations, Eastern Market being the closest at Eighth and Pennsylvania four blocks to the south, linking it to points as far north as Gaithersburg, Md. and other points, such as National Airport and the Maryland and Virginia suburbs.

527-29 8th St., SE                          Page 5

Eighth Street is a macadam covered four lane thoroughfare which starts at the Washington Navy Yard three blocks south of subject and heads north, through Capitol Hill, to Gallaudet College on Florida Avenue. Parking is available on both sides of the street. It is primarily a commercial street from the Navy Yard to Pennsylvania Avenue (approximately six blocks). There are concrete curbs, gutters and pedestrian sidewalks on both sides of the street and public street lights at regular are mounted on poles.

The immediate vicinity of the subject along Eighth Street is zoned C-2-A, community business district with medium density. The streets that cross Eighth Street north of subject (G and E Streets), as well as Seventh Street and most of Ninth Street, are zoned R-4, low density residential.

The subject's immediate neighborhood includes the historic Marine Barracks on the east side of Eighth Street between G and I Streets. Three blocks to the southwest is the former Ellen Wilson public housing project. This was recently razed to make room for a new, 25 million dollar, federally financed, residential cooperative project which is currently under construction. North of subject, closer to Pennsylvania Avenue, there are a number of small buildings with a variety of commercial uses, including restaurants, offices, and retail stores. District Lock and Hardware, a business serving Capitol Hill for decades, along with a movie theater, several restaurants, a flower store, and a storefront church are in the same block as subject and on the same side of the street. Across from the subject is a large Victorian style building, recently purchased by the Shakespeare Theater, that is currently undergoing a substantial renovation.

The 500 block of Eighth Street contains mainly buildings with stores providing neighborhood retail goods and services with office space on the second floors. There are many signs advertising spaces for lease in the 400, 500, and 700 blocks of the street (there is no 600 block), but most are for office space; there is little retail space available for lease.

The subject is located within the Capitol Hill Historic District. Thus, the likelihood of adverse uses being permitted in the area is lessened. A further discussion of the implications of this designation is included later in this report.

In summary, the neighborhood can be expected to retain its character and existing uses, with little new private development on a massive scale likely (location in an historic district places limits on development). It is near to bus and subway transportation and provides neighborhood retail services for the residents.

Property Description

Real Estate Assessment

|                    | TY 1996    | TY 1997    | TY 1998    |
|--------------------|------------|------------|------------|
| Land Assessment    | $109,795   | $109,795   | $109,795   |
| Improvements       | $99,205    | $99,205    | $99,205    |
| Total Assessment   | $209,000   | $209,000   | $209,000   |

According to information from the DC Office of Finance and Revenue, outstanding real estate taxes are owed in the amount of $1,151.14.

Building on Historic Register:      No

Building in Historic District:      Yes

Site/Improvements Remarks

The subject site is located on the west side of 8th Street, SE. The legal description is Lot 819 in Square 903 in the District of Columbia. The site is rectangular with 27.5 ft. of frontage on Eighth Street and a depth of 114.1 ft. A 20 ft. wide public alley that runs north to south provides access to the rear of

REAL ESTATE APPRAISAL & ADVISORY SERVICES

the subject site from E Street. The total area of the site, according to assessment records, is 3,137 square feet. The frontage of the site is at sidewalk grade and is basically level. The site slopes down slightly to the alley at the rear.

The subject site is improved with a one-story row building at 527 and a one-story building at 529 that has a partial second floor. The exterior walls of the one-story buildings are masonry and the partial second floor is wood frame construction. The improvements were reported to have originally been constructed prior to 1910.

There is no landscaping on the site.

All utilities are available to the site.

The interior of the subject first floor was inspected on October 26, 1998 by Robert Herrema. The interior of the second floor was inspected on November 3, 1998.

No easements, encumbrances, or encroachments were observed or brought to our attention at the time of inspection, except the partial second floor of the 529 portion of the subject is connected to the partial second floor of the building at 531 8th Street which is not the subject of this appraisal. The combined second floor spaces are rented as one apartment to a residential tenant. Neither a recent survey nor a title report was made available to the appraiser.

The subject site is in conformity with the surrounding area.

According to FEMA Map, Panel #110001 0030 B, dated November 15, 1985, the property is in Zone C which is an area of minimal flood potential.

Description of Improvements

The subject is improved with two attached one-story row buildings (527 and 529 8th St.) with 529 having a partial second floor. According to DC Assessors' records, the total gross building area (GBA) of subject is 3,667 square feet. Measurements taken during the inspection resulted in a GBA similar to the DC records. The first floor, including the storage area at the rear, which is 2.5 ft. lower than the store space and attached carry-out, has 3,100 sq. ft., and the second floor has 577 sq. ft. The northeast corner of the first floor of 527 8th St. has a separate front entrance and was used as a carry-out but is currently vacant. This space is approximately 10 ft. wide by 30 ft. deep and is in deteriorated condition. There is an exterior stairway that provides access from the front sidewalk to the second floor space over 529 8th St. This stairway is in between the carry-out and the convenience store and is covered with an asphalt based material as it is connected to the roof of the one-story 527 building. The partial second floor of 529 is connected to the partial second floor of the building at 531 8th Street (owned by the same persons). Both spaces are rented as one apartment to a residential tenant. The space over 529 has a shower bathroom and three other rooms. The kitchen and second bathroom is in the space over 531 which is not the subject of this appraisal.

Structural Elements

The first floor of the buildings have brick exteriors; the partial second floor of 529 has a wood frame and siding exterior. Floor and roof decks are wood joists.

The roof over the one-story portion of the subject's two buildings is flat with an asphalt membrane covering. The roof over the partial second floor is sloped from front to back. It was not inspected but there is evidence of leaks. There is a substantial amount of obsolete HVAC equipment on the flat roofs.

HVAC

The first floor of the building is heated and cooled by a central forced air system.

527-29 8th St., SE                                Page 7

## Fixtures and Appliances

The bath in the apartment space over 529 contains a shower stall, toilet, and vanity cabinet. The bathroom in the store area of 529 has a toilet and vanity cabinet. There is also a small sink adjacent to this bathroom

## Finishes

The kitchen and bathroom floors as well as the convenience store floors are covered with resilient tile. The carry-out floors are ceramic tile. The storage area for the store has a concrete floor. The several rooms in the second floor apartment have floors covered with carpet. There is painted drywall on the walls and ceilings.

## Electrical

The retail space has a 200 amp electric panels with circuit breakers.

A variety of surface mounted fluorescent and incandescent fixtures are in all of the spaces.

## USE RESTRICTIONS

## Historic Designation Restrictions

Capitol Hill is one of several Washington neighborhoods that has been designated by the U.S. Department of the Interior as an historic district. As such, it is governed by DC Law 2-144, the "Historic Landmark and Historic District Protection Act of 1978." The stated purpose of this law is "to retain and enhance those properties which contribute to the character of the historic district and to encourage their adaptation for current use; to assure that alterations of existing structures are compatible with the character of the historic district." Generally, buildings completed after 1919 are not considered to be contributing structures. While initially concerned with the design elements of renovation and new structures, the Historic Preservation Review Board (HPRB) in recent years has become increasingly concerned with the general bulk of new buildings and additions; in some cases, it has denied applicants the right to build within the zoning envelope.

The subject buildings should be considered as contributing to the historic character of the Capitol Hill neighborhood. Therefore, it is assumed that the buildings could not be razed or the exteriors significantly altered.

## Zoning

The subject property is zoned C-2-A. This is the typical commercial zoning for supporting inner-city neighborhoods. This classification is designed "to provide facilities for shopping and business needs, housing, and mixed uses for large segments of the city outside of the central core." Development is to be limited to "medium proportions." General uses permitted include office space, retail establishments, service businesses (with some restrictions on sexually-oriented businesses), and fast food restaurants.

The general restrictions of the C-2-A zoning are as follows:

| | |
|---|---|
| Height - in feet | 50 |
| Height - in stories | None |
| | |
| Floor Area Ratio | For apartment house or other residential use 2.5; Other permitted use - 1.5. Maximum permitted 2.5. This means that if a new structure were to be erected on the site, the commercial component can have an FAR of only 1.5. |

527-29 8th St., SE                                Page 8

% of Lot Occupancy                    For residential use - 60%; for commercial use - 100% on the
                                      first floor, and subject to setback limitations for rear yard on
                                      a plane above 20 feet.  The minimum rear yard shall be 15
                                      feet.

Side Yards                            None required, but if provided, it must be 2 inches per foot
                                      of height with 6 foot minimum.

Parking                               Offices General - no requirement for the first 2,000 square
                                      feet of gross floor area.  In excess of 2,000 square feet, 1
                                      for each 600 square feet of gross floor area and cellar floor
                                      area.

                                      Retail Services - no requirement for the first 3,000 square
                                      feet of gross area.  In excess of 3,000 square feet, 1 for each
                                      300 square feet of gross floor area and cellar floor area.

                                      No additional parking shall be required for a historic
                                      landmark or a building or structure in a historic district
                                      which is certified by the State Historic Preservation Officer
                                      as contributing to the character of that historic district.

Loading and Unloading                 No loading facilities are required for any building
                                      having 5,000 square feet or less.  For retail service
                                      use - 1 loading platform is required for any building
                                      containing from 5,000 square feet to 20,000 sq. ft.

Zoning Compliance

        The following table reviews the subject improvements compared to various requirements of the
zoning regulations:

| Category | Required/Allowed | Existing |
|---|---|---|
| Height | 50 ft. | Approx. 25 ft. |
| FAR Maximum | 2.5 | 1.17 |
| FAR-Nonresidential | 1.5 | |
| Rear Yard | 15 ft. | 0 ft. |
| Parking | 1 space | None |
| Loading | None | None |

        The subject is considered to be a legally non-conforming building because its construction pre-
dates the current zoning regulations.

527-29 8th St., SE                           Page 9

## HIGHEST AND BEST USE

The subject site is legally permitted to have a building improvement with a density, for residential uses, not to exceed 2.5 times the land area. Of this density, 1.5 may be used for non-residential use, including retail and office, unless a zoning variance is granted. The site is in an historic neighborhood and a new building would probably be required to conform to the general bulk and density of the neighborhood. Two and three-story buildings are predominant.

The site is rectangular, on grade with surrounding streets and alleys and appears physically capable of supporting most normal uses.

### As If Vacant

The three most probable uses are retail, office and residential. Of the three, residential is least likely, given the generally commercial nature of the street. The Eighth Street commercial corridor between Pennsylvania Avenue and Eye Street has very little new or renovated residential space for lease. Since a two (or three) story building is likely in this neighborhood, and second floor retail is seldom successful, a probable development would be retail on the first floor and office space above. Retail rents are in the $10 - $15 per square foot range and office rents generally run $9 - $12 per square foot with the tenant paying insurance, repairs and cleaning and the landlord paying real estate taxes and the maintenance of major building systems/components. Most retail space on the street is leased. On the other hand, a good deal of the second floor space, much of which needs renovation, is vacant. If the lot were vacant, interim use as a parking lot would probably not be permitted because of the site's location in an historic neighborhood.

Our conclusion is that the highest and best use of the subject as vacant is to build a two or three-story building with first floor retail use and second and/or third floor office use. There would be no interim use for the site.

### As Improved

The subject site is improved with two connected one-story buildings with one having a partial second story. The first floor of the two buildings has a convenience store and a separate carry-out in the front with a storage area in the rear. The partial second floor is connected to the partial second floor of the building at 531 8th St. and they consist of a three-bedroom, two bath, apartment. The building is basically in fair condition with most finishes in the retail portion being deteriorated and dated. The apartment is also in fair condition. The area does have a number of retail establishments nearby. The highest and best use is continued retail use with the apartment on the upper floor.

pgs 10-16 deleted

527-29 8th St., SE                          Page 17

Band of Investment Technique

|                             | % Value | Constant | Weighted Rate |
|-----------------------------|---------|----------|---------------|
| Mortgage Position           | .70     | .106     | .0742         |
| Equity Position             | .30     | .11      | .033          |
| Overall Capitalization Rate |         |          | .1072         |
| Rounded to                  |         |          | 10.75%        |

Rates published by market sources, such as the Appraisal Institute's Appraiser News, and The American Council of Life Insurance's Investment Bulletin for the Fourth Quarter of 1997, also indicate current market conditions, although these rates are generally based on data reported for very large properties. The published cap rates ranged from 9.09% to 9.8 %.

Conclusion

Considering all of the above and the fact that the existing retail rent might be slightly above market and the property is not likely to experience significant appreciation, a capitalization rate of 10.5% is used in this appraisal.

## RECONCILIATION

The Cost Approach has been omitted due to the age and economic characteristics of the subject. The value estimate derived from the Income Approach, $191,000, is considered to be a reliable indicator for small commercial buildings on Capitol Hill so it is given some weight in arriving at a final value conclusion. The value from the Sales Comparison Approach, $184,000, is usually the most reliable indicator of value in the eyes of the most likely purchaser, an owner-user; it is given the greatest weight. Therefore, the estimated value of the subject property is $185,000. However, it is estimated that it would cost $10,000 to separate the second floor apartment from the building at 531 8th Street including installing a kitchen and HVAC system. A reduction in the market value of $10,000 is warranted resulting in an estimated market value for subject of $175,000.

## FINAL VALUE CONCLUSION

The final estimate of market value of the fee simple interest in the subject property, as of November 6, 1998, is:

### One Hundred Seventy Five Thousand Dollars
### ($175,000)

This value is subject to the assumptions and limiting conditions contained herein.

Marketing Time

Marketing time for the properties that were analyzed varied from several months to in excess of one year with several taking at least nine months. It is reasonable to assume that the subject would need at least nine months exposure in the market before a sale would be consummated. Therefore, marketing time of one year is estimated.

Robert Herrema
DC Certified General Real Property Appraiser #10374

*pgs 18-32 deleted*

# HARPS & SCALLA LLC

J. Andrew Scallan
Richard R. Harps, MAI, CRE

Stephen Brennan
Robert Herrema

# SUMMARY REPORT

## OF A

# COMPLETE APPRAISAL

## OF

## 531 EIGHTH STREET, SE
## WASHINGTON, DC 20003
## (SQUARE 903, LOT 820)

Valued as of

## DECEMBER 9, 1998

Prepared for

### FIRST LIBERTY NATIONAL BANK
### C/O MR. ROBERT COWDREY, VICE PRESIDENT
### 1146 19TH STREET, NW
### WASHINGTON, DC 20036

Prepared On

December 9, 1998

REAL ESTATE APPRAISAL & ADVISORY SERVICE

1522 K Street, N.W. • Suite 720 • Washington, DC 20005 • Tel . (202) 682-9451 • Fax (202) 682-1579

# HARPS & SCALLAN LLC

J. Andrew Scallan
Richard R. Harps, MAI, CRE

Stephen Brennan
Robert Herrema

December 10, 1998

Mr. Robert Cowdrey
Vice President
First Liberty National Bank
1146 19th Street, NW
washington, DC 20036

Dear Mr. Cowdrey:

In accordance with your request, I have personally inspected and evaluated the real property at 531 8th Street, SE. The purpose of this evaluation is to estimate the market value of the fee simple interest in the property. The date of this value estimate is December 9, 1998, the date on which the property was inspected.

Should the contract purchaser of the the adjoining property at 527-529 8th Street, SE also contract to purchase the subject, then the value estimate developed in this appraisal should be considered to supplement the value estimate of $185,000 developed in the appraisal of that property which was prepared for you on November 13, 1998 with a valuation date of November 6, 1998. Please note that if there is one purchaser of both properties, the $10,000 deduction for converting the apartment on the second floor of the two properties into two separate apartments will not be necessary.

The value reported is subject to the assumptions and limiting conditions set forth in the attached report. This report has been prepared in accordance with the Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Standards Board of the Appraisal Foundation.

The attached report contains the descriptions, analysis, and supportive data for the conclusion and final estimate of value together with descriptive photographs.

I appreciate the opportunity to work with you..

Sincerely yours,

Robert Herrema
DC Certified General Appraiser #10374

# SUMMARY REPORT OF A COMPLETE APPRAISAL

This is a Summary Report of a Complete Appraisal which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice. As such, it presents only summary discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated below. The appraiser is not responsible for unauthorized use of this report.

**Client:**  FIRST LIBERTY NATIONAL BANK
C/O MR. ROBERT COWDREY, VICE PRESIDENT
1146 19TH STREET, NW
WASHINGTON, DC 20036

**Appraiser:**  ROBERT HERREMA
1522 K STREET, NW, SUITE 720
WASHINGTON, DC 20005

**Subject:**  531 EIGHTH STREET, SE
WASHINGTON, DC 20003

**Legal Description:**  SQUARE 903, LOT 820

## Purpose of the Appraisal

The purpose of the analysis is to estimate the "as is" market value of the fee simple interest, subject to the existing leases on the property, and the assumptions and limitations set forth herein, including but not limited to environmental and ADA considerations. For the purposes of this analysis, market value is defined in the "Federal Register", Vol. 55, No. 165, August 1990, section 34.42 (f), as:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

(1)  Buyer and seller are typically motivated;

(2)  Both parties are well informed or well advised and acting in what they consider their own best interests;

(3)  A reasonable time is allowed for exposure in the open market;

(4)  Payment is made in terms of cash in US dollars or in terms of financial arrangements comparable thereto; and

(5)  The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

The value estimated in the report is a cash equivalent value (cash to the seller with the purchaser obtaining typical market financing).

"As is" is the subject in its physical and developable state on the date of valuation.

REAL ESTATE APPRAISAL & ADVISORY SERVICES

## Intended Use

The intended use of this report is for loan underwriting purposes.

The intended user of this report is the client, First Liberty National Bank.

## Scope of Appraisal

This summary report is based on an appraisal utilizing the Sales Comparison Approach (comparing recent sales of similar properties in the neighborhood) and the Income Approach (utilizing income and expense data from similar properties in the neighborhood). In preparing this appraisal, the appraiser

- inspected the subject site and interior of the improvements.
- gathered the information on comparable improved sales; inspected the exteriors of the properties used as comparables and verified each sale when possible.
- gathered comparable rental rates for competing space.
- applied the Sales Comparison Approach and the Income Approach to arrive at an indication of value.
- reconciled the approaches and derived a final value.

The Cost Approach was not used in this case since the market does not generally consider new construction as an alternative due to the lack of available land in the subject's neighborhood. Therefore, the property has been valued utilizing only the Sales Comparison and Income Approaches, which is consistent with current market practices. This summary report is a brief recapitulation of the appraiser's data, analyses, and conclusions. Supporting documentation is retained in the appraiser's file.

## Interest Valued

Fee simple value.

## Effective Date of Value/Date of Report

The effective date of value is December 9, 1998, the date on which the property was inspected. The report date is December 9, 1998.

## Client

The client in this appraisal is First Liberty National Bank.

## Identification of Personal Property or Other Than Real Property

No personal property or other than real property is appraised in this report.

## History of the Property

The subject and the adjoining property at 527-29 8th Street (Lot 819) were purchased by the owners for $325,000 with the deed being recorded on September 5, 1990. The first floor of subject has been vacant for some time although it is in the process of being built out as a restaurant. The current owner indicated that it is leased to the restaurant operator with lease payments beginning in January, 1999. The second floor of the building, which is partial, is an apartment leased for residential purposes that also includes the partial second floor over 527-29 8th Street. It is our understanding that the current convenience store tenant has contracted to purchase the subject property and the adjacent property known as 527-529 8th Street.

District Economic Data

 Population. The District's population has declined sharply in the 1990s, falling from 606,900 residents in 1990 to an estimated 528,900 as of December 1997. While the loss rate slowed in 1997, demographers say it is too early to predict an end to the exodus that has depressed the city's economy and weakened the tax base.

 Employment. While the number of jobs in the Washington area (MSA) increased from 2.14 million in 1992 to 2.29 million in 1997, the District lost 57,600 jobs during the period. The losses were mainly due to federal and District government downsizing.

On the plus side, the government payroll reductions, which got underway in 1994, seem to be coming to an end. Economic conditions in the city are improving, which should stimulate job creation and reduce the city's unemployment rate, which is three times higher than in the suburbs.

 Housing and Real Estate. Sales of new and existing homes went up by 31% in the District in 1997. The recovery in the housing market has carried over to 1998, helped by special tax incentives enacted by Congress last year. Compared to a year ago, sales of existing homes in the District went up by 23% during the first quarter of 1998. Office construction and the renovation of existing buildings have surged recently, fueled by rising rents, a paucity of construction in recent years, and growing demand. The revived office market has driven the vacancy rate down to 7.5% as of June 1998. Much of the development activity is centered in the long dormant and rundown east end of downtown, where the new MCI sports arena is located.

 Summary. The business outlook has improved markedly in 1998. Positive signs include renewed investor interest, robust home sales, a revived office market, and a dramatic turnaround in the city government's financial prospects. For the first time in years, the D.C. government ran a surplus in fiscal 1997 and further budget surpluses are forecast for the years ahead, mainly due to reductions in spending, tightened tax collection procedures, and a stronger economy. Local officials recently approved plans for a new $650 million convention center. Also downtown, a $38.5 million business improvement district, or BID, has been formed to improve the area's safety and cleanliness. In the near future, business tax changes will be considered in an effort to make the District more competitive with its surrounding suburban jurisdictions.

Neighborhood Description

 The subject is located in the historic Capitol Hill neighborhood of the District; one which experienced gentrification from the 1960s to the 1980s with a considerable increase in real estate values. However, property values in the area have suffered somewhat in recent years because, according to local newspaper reports, many middle class residents are moving to the suburbs due to their concern about crime, increasing taxes and a below standard school system. Capitol Hill is an attractive neighborhood of low density townhouses, mainly nineteenth century, with a generally restored area of approximately twelve blocks north to south and twelve blocks running east to west. The dominant housing type in Capitol Hill is two-and three-story single family homes and two-family flats. There are several blocks of commercial development along Pennsylvania Avenue, Seventh Street, and Eight Street, all in the southeast quadrant as well as along Massachusetts Avenue, NE stretching five to six blocks southeast from Union Station. Union Station is located directly north of the congressional office complex. Subject is located at 531 Eighth street, approximately one mile southeast of the U S Capitol and one block north of the Marine Commandments residence.

 Excellent bus transportation serves the neighborhood and there are several nearby MetroRail stations, Eastern Market being the closest at Eighth and Pennsylvania four blocks to the south, linking it to points as far north as Gaithersburg, Md. and other points, such as National Airport and the Maryland and Virginia suburbs.

Eighth Street is a m̲ covered four lane thoroughfare wh.     arts at the Washington Navy Yard three blocks south of subject and heads north, through Capitol Hill, to Gallaudet College on Florida Avenue. Parking is available on both sides of the street. It is primarily a commercial street from the Navy Yard to Pennsylvania Avenue (approximately six blocks). There are concrete curbs, gutters and pedestrian sidewalks on both sides of the street and public street lights at regular are mounted on poles.

The immediate vicinity of the subject along Eighth Street is zoned C-2-A, community business district with medium density. The streets that cross Eighth Street north of subject (G and E Streets), as well as Seventh Street and most of Ninth Street, are zoned R-4, low density residential.

The subject's immediate neighborhood includes the historic Marine Barracks on the east side of Eighth Street between G and I Streets. Three blocks to the southwest is the former Ellen Wilson public housing project. This was recently razed to make room for a new, 25 million dollar, federally financed, residential cooperative project which is currently under construction. North of subject, closer to Pennsylvania Avenue, there are a number of small buildings with a variety of commercial uses, including restaurants, offices, and retail stores. District Lock and Hardware, a business serving Capitol Hill for decades, along with a movie theater, several restaurants, a flower store, and a storefront church are in the same block as subject and on the same side of the street. Across from the subject is a large Victorian style building, recently purchased by the Shakespeare Theater, that is currently undergoing a substantial renovation.

The 500 block of Eighth Street contains mainly buildings with stores providing neighborhood retail goods and services with office space on the second floors. There are many signs advertising spaces for lease in the 400, 500, and 700 blocks of the street (there is no 600 block), but most are for office space; there is little retail space available for lease.

The subject is located within the Capitol Hill Historic District. Thus, the likelihood of adverse uses being permitted in the area is lessened. A further discussion of the implications of this designation is included later in this report.

In summary, the neighborhood can be expected to retain its character and existing uses, with little new private development on a massive scale likely (location in an historic district places limits on development). It is near to bus and subway transportation and provides neighborhood retail services for the residents.

Property Description

Real Estate Assessment

|  | TY 1996 | TY 1997 | TY 1998 |
|---|---|---|---|
| Land Assessment | $69,860 | $69,860 | $69,860 |
| Improvements | $98,140 | $98,140 | $98,140 |
| Total Assessment | $168,000 | $168,000 | $168,000 |

According to information from the DC Office of Finance and Revenue, there is a substantial amount of outstanding real estate taxes owed.

Building on Historic Register:        No

Building in Historic District:        Yes

Site/Improvements Remarks

The subject site is located on the west side of 8th Street, SE. The legal description is Lot 820 in Square 903 in the District of Columbia. The site is rectangular with 17.5 ft. of frontage on Eighth Street and a depth of 114.1 ft. A 20 ft. wide public alley that runs north to south provides access to the rear of

the subject site from E Street. the total area of the site, according to assessment records, is 1,996 square feet. The frontage of the site is sidewalk grade and is basically level. site slopes down slightly to the alley at the rear.

The subject site is improved with a one-story row building that has a partial second floor. The exterior walls of the one-story building are masonry and the partial second floor is wood frame construction. The improvements were reported to have originally been constructed prior to 1910.

There is no landscaping on the site.

All utilities are available to the site.

The interior of the subject first floor was inspected on December 9, 1998 by Robert Herrema.

No easements, encumbrances, or encroachments were observed or brought to our attention at the time of inspection, except the partial second floor is connected to the partial second floor of the building at 529 8th Street which is the subject of another appraisal made by us as of November 6, 1998. The combined second floor spaces are rented as one apartment to a residential tenant. Neither a recent survey nor a title report was made available to the appraiser.

The subject site is in conformity with the surrounding area.

According to FEMA Map, Panel #110001 0030 B, dated November 15, 1985, the property is in Zone C which is an area of minimal flood potential.

## Description of Improvements

The subject is improved with an attached one-story row building having a partial second floor. According to DC Assessors' records, the total gross building area (GBA) of subject is 2,667 square feet. Measurements taken during the inspection resulted in a GBA similar to the DC records. The first floor has 1,996 sq. ft., including the small portion of the first floor used as the entrance foyer and stairway to the second floor apartment. The partial second floor of 531 is connected to the partial second floor of the building at 529 8th Street (owned by the same persons) and has approximately 624 sq. ft.. Both spaces are rented as one apartment to a residential tenant. The space over 531 has a bathroom, kitchen and two other rooms.

## Structural Elements

The first floor of the building has a brick exterior; the partial second floor of 531 has a wood frame and siding exterior. Floor and roof decks are wood joists.

The roof over the one-story portion of the subject's two buildings is flat with an asphalt membrane covering. The roof over the partial second floor is sloped from front to back. It was not inspected but there is evidence of leaks. There is a substantial amount of obsolete HVAC equipment on the flat roof.

## HVAC

The first floor of the building is heated and cooled by a central forced air system with natural gas as the fuel for heating. The equipment is not new and it was not in operation at the time of the inspection as construction work has been started to build out a restaurant.

## Fixtures and Appliances

The bath in the apartment space over 531 contains a bathtub, toilet, and vanity cabinet. There are two new bathrooms in the restaurant space, each having a toilet and vanity cabinet. There is a mop sink and a three-compartment sink in the kitchen area of the first floor restaurant space.

REAL ESTATE APPRAISAL & ADVISORY SERVICES

## Finishes

The kitchen and bathroom floors of the restaurant and the apartment are covered with resilient tile. The front portion of the restaurant space is a combination of concrete and plywood with no coverings as of the date of inspection. The several rooms in the second floor apartment have floors covered with carpet. There is painted drywall on the walls and ceilings of both spaces.

## Electrical

The building has a 200 amp electric panel with circuit breakers.

A variety of recessed lighting fixtures and surface mounted fluorescent and incandescent fixtures are in all of the spaces.

## General

The condition of the second floor apartment is fair. The first floor is in the process of being built out as a restaurant and is about 80% complete. Some kitchen equipment has been installed and other pieces of equipment are in the building but not installed. Architectural plans were observed on the site but only one of the pages had DC Government approval. The owner indicated that there was a building permit but it had been removed when the space was being painted.

## USE RESTRICTIONS

### Historic Designation Restrictions

Capitol Hill is one of several Washington neighborhoods that has been designated by the U.S. Department of the Interior as an historic district. As such, it is governed by DC Law 2-144, the "Historic Landmark and Historic District Protection Act of 1978." The stated purpose of this law is "to retain and enhance those properties which contribute to the character of the historic district and to encourage their adaptation for current use; to assure that alterations of existing structures are compatible with the character of the historic district." Generally, buildings completed after 1919 are not considered to be contributing structures. While initially concerned with the design elements of renovation and new structures, the Historic Preservation Review Board (HPRB) in recent years has become increasingly concerned with the general bulk of new buildings and additions; in some cases, it has denied applicants the right to build within the zoning envelope.

The subject buildings should be considered as contributing to the historic character of the Capitol Hill neighborhood. Therefore, it is assumed that the buildings could not be razed or the exteriors significantly altered.

### Zoning

The subject property is zoned C-2-A. This is the typical commercial zoning for supporting inner-city neighborhoods. This classification is designed "to provide facilities for shopping and business needs, housing, and mixed uses for large segments of the city outside of the central core." Development is to be limited to "medium proportions." General uses permitted include office space, retail establishments, service businesses (with some restrictions on sexually-oriented businesses), and fast food restaurants.

The general restrictions of the C-2-A zoning are as follows:

| | |
|---|---|
| Height - in feet | 50 |
| Height - in stories | None |

531 8th St., SE
Page 8

| | |
|---|---|
| Floor Area Ratio | For apartment house or other r\_\_\_\_\_ntial use 2.5; Other permitted use - 1.5.  Maximum permitted 2.5.  This means that if a new structure were to be erected on the site, the commercial component can have an FAR of only 1.5. |
| % of Lot Occupancy | For residential use - 60%; for commercial use - 100% on the first floor, and subject to setback limitations for rear yard on a plane above 20 feet.  The minimum rear yard shall be 15 feet. |
| Side Yards | None required, but if provided, it must be 2 inches per foot of height with 6 foot minimum. |
| Parking | Offices General - no requirement for the first 2,000 square feet of gross floor area.  In excess of 2,000 square feet, 1 for each 600 square feet of gross floor area and cellar floor area.

Retail Services - no requirement for the first 3,000 square feet of gross area.  In excess of 3,000 square feet, 1 for each 300 square feet of gross floor area and cellar floor area.

No additional parking shall be required for a historic landmark or a building or structure in a historic district which is certified by the State Historic Preservation Officer as contributing to the character of that historic district. |
| Loading and Unloading | No loading facilities are required for any building having 5,000 square feet or less.  For retail service use - 1 loading platform is required for any building containing from 5,000 square feet to 20,000 sq. ft. |

Zoning Compliance

The following table reviews the subject improvements compared to various requirements of the zoning regulations:

| Category | Required/Allowed | Existing |
|---|---|---|
| Height | 50 ft. | Approx. 25 ft. |
| FAR Maximum | 2.5 | 1.34 |
| FAR-Nonresidential | 1.5 | |
| Rear Yard | 15 ft. | 0 ft. |
| Parking | 1 space | None |
| Loading | None | None |

The subject is considered to be a legally non-conforming building because its construction pre-dates the current zoning regulations.

REAL ESTATE APPRAISAL & ADVISORY SERVICES

## HIGHEST AND BEST USE

The subject site is legally permitted to have a building improvement with a density, for residential uses, not to exceed 2.5 times the land area. Of this density, 1.5 may be used for non-residential use, including retail and office, unless a zoning variance is granted. The site is in an historic neighborhood and a new building would probably be required to conform to the general bulk and density of the neighborhood. Two and three-story buildings are predominant.

The site is rectangular, on grade with surrounding streets and alleys and appears physically capable of supporting most normal uses.

### As If Vacant

The three most probable uses are retail, office and residential. Of the three, residential is least likely, given the generally commercial nature of the street. The Eighth Street commercial corridor between Pennsylvania Avenue and Eye Street has very little new or renovated residential space for lease. Since a two (or three) story building is likely in this neighborhood, and second floor retail is seldom successful, a probable development would be retail on the first floor and office space above. Retail rents are in the $10 - $15 per square foot range and office rents generally run $9 - $12 per square foot with the tenant paying insurance, repairs and cleaning and the landlord paying real estate taxes and the maintenance of major building systems/components. Most retail space on the street is leased. On the other hand, a good deal of the second floor space, much of which needs renovation, is vacant. If the lot were vacant, interim use as a parking lot would probably not be permitted because of the site's location in an historic neighborhood.

Our conclusion is that the highest and best use of the subject as vacant is to build a two or three-story building with first floor retail use and second and/or third floor office use. There would be no interim use for the site.

### As Improved

The subject site is improved with a one-story building having a partial second story. The first floor of the building is a vacant space that is being built out as a restaurant. The partial second floor is connected to the partial second floor of the building at 529 8th St. and they consist of a three-bedroom, two bath, apartment. The area does have a number of retail establishments nearby. The highest and best use is continued retail use with the apartment on the upper floor.

Pgs 10 - 15
deleted

|  | % Value | Constant | Weighted Rate |
|---|---|---|---|
| Mortgage Position | .70 | .106 | .0742 |
| Equity Position | .30 | .11 | .033 |
| Overall Capitalization Rate |  |  | .1072 |
| Rounded to |  |  | 10.75% |

Rates published by market sources, such as the Appraisal Institute's Appraiser News, and The American Council of Life Insurance's Investment Bulletin for the Fourth Quarter of 1997, also indicate current market conditions, although these rates are generally based on data reported for very large properties. The published cap rates ranged from 9.09% to 9.8 %.

Conclusion

Considering all of the above and the fact that the existing retail rent might be slightly above market and the property is not likely to experience significant appreciation, a capitalization rate of 10.5% is used in this appraisal.

RECONCILIATION

The Cost Approach has been omitted due to the age and economic characteristics of the subject. The value from the Sales Comparison Approach, $155,000, is usually the most reliable indicator of value in the eyes of the most likely purchaser, an owner-user. The value estimate derived from the Income Approach, $145,000, is considered to be a reliable indicator for small commercial buildings on Capitol Hill so it is given some weight in arriving at a final value conclusion. Therefore, the estimated value of the subject property is $150,000.

FINAL VALUE CONCLUSION

The final estimate of market value of the fee simple interest in the subject property, as of December 9, 1998, is:

**One Hundred Fifty Thousand Dollars ($150,000)**

This value is subject to the assumptions and limiting conditions contained herein.

Marketing Time

Marketing time for the properties that were analyzed varied from several months to in excess of one year with several taking at least nine months. It is reasonable to assume that the subject would need at least nine months exposure in the market before a sale would be consummated. Therefore, marketing time of one year is estimated.

Robert Herrema
DC Certified General Real Property Appraiser #10374

pgs 17-29 deleted

REAL ESTATE APPRAISAL & ADVISORY SERVICES