IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EMEBET FIKRU, et al. | Case No.  1:05CV01162 |
| Plaintiffs/Counter-Defendants, | Judge:  James Robertson |
| v. | Deck Type:  General Civil |
| HOUSHANG H. MOMENIAN, et al. | Date:  Initial Conference |
| Defendants/Counter-Plaintiffs. |  |

|  |  |
|---|---|
| HOUSHANG H. MOMENIAN, et al. | Case No.  1:05CV01162 |
| Counter-Plaintiffs/Defendants, | Judge:  James Robertson |
| v. | Deck Type:  General Civil |
| EMEBET FIKRU, et al. | Date:  Initial Conference |
| Counter-Defendants/Plaintiffs. |  |

## ANSWER, COUNTERCLAIM, AND JURY DEMAND OF DEFENDANTS/COUNTER-PLAINTIFFS HOUSHANG H. MOMENIAN AND VIDA MOMENIAN

Defendants/Counter-Plaintiffs Houshang H. Momenian and Vida Momenian (the "Momenians"), by counsel, hereby respond to the complaint filed by plaintiffs Emebet Fikru and Tesfay X. Guebre (the "Plaintiffs" or "Fikru Plaintiffs"), as follows:

## ANSWER

Defendants/Counter-Plaintiffs the Momenians hereby answer each of the numbered paragraphs of the Complaint, as follows:

1.     The allegations in paragraph 1 that are legal conclusions require no response. In further response the Momenians deny that they are "permanent residence alien[s]" but admit that they reside in Maryland and that the amount of the claims in this case exceed $75,000. In further answer, the Momenians lack sufficient knowledge to admit or deny the remaining allegations of this paragraph, so deny same.

2.     The allegations in paragraph 2 that are legal conclusions require no response. In further response the Momenians admit that they "claim an interest" in the real estate at issue in this case. In further answer, the Momenians lack sufficient knowledge to admit or deny the remaining allegations of this paragraph, so deny same.

3.     The allegations in paragraph 3 that are legal conclusions require no response. In further response the Momenians admit that the real estate at issue is located in this district and that many of the matters relating to these claims occurred in this district.

4.     The Momenians admit that prior to December 1998 they owned three lots on 8th Street, S.E. in the District of Columbia – 527, 529, and 531. The remaining allegations of paragraph 4 are denied.

5.     The Momenians admit that they purchased these three lots in or about 1990 from Paul and Amelia Interdonato and that the Interdonatos took back First Trust financing in the amount of approximately $265,000. The Momenians further state that they had not yet paid off this loan by December 21, 1998.   In further answer, the Momenians state that the deed of trust to which reference is made in paragraph 5 speaks for itself and is the best evidence of what it says. The

Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

6.     The Momenians admit the first sentence of paragraph 6 except that the documents relating to the mortgage loan referenced in paragraph 6 speak for themselves and are the best evidence of what they say. In further answer Momenians admit that First Union Bank prior to December 21, 1998, had either threatened or noticed a default and/or foreclosure and that this situation was one reason the Momenians decided to sell 527 and 529 8th Street, S.E. to Plaintiffs. The Momenians deny any remaining allegations in paragraph 6 not expressly admitted.

7.     The Momenians admit that they conveyed three lots on 8th Street S.E. to Fikru Plaintiffs on or about December 21, 1998. The Momenians further state that as contemporaneous and subsequent documents show, they sold the 527-529 Property to the Fikru Plaintiffs and that the 531 Property was temporarily conveyed to them at the time to facilitate Plaintiffs' financing and that the parties always agreed that the 531 Property would be re-conveyed back to the Momenians without charge and free of liens and encumbrances. The Momenians further state that the Warranty Deed identified in paragraph 7 speaks for itself and is the best evidence of what it says. On information and belief, the Momenians admit that was recorded shortly after it was executed. The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

8.     The Momenians state that they entered into a sales contract with the Plaintiffs on or about the date indicated in the contract and that the sales contract related only to the 527-529 Property and not to the 531 Property. In further answer, the Momenians state that the real estate contract identified in paragraph 8 speaks for itself and is the best evidence of what it says. The

Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

9.    The Momenians state that the HUD-1 Settlement Statement identified in paragraph 9 speaks for itself and is the best evidence of what it says.   The Momenians further state that all parties executed the settlement statement as did the settlement attorney. The Momenians deny any characterization of it other than its actual words.  The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

10.    The Momenians state that the Settlement Statement characterized in paragraph 10 speaks for itself and is the best evidence of what it says.  The Momenians deny any characterization of it other than its actual words.  The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

11.    Denied.  In further answer the Momenians note the inconsistency between the sales contract and the settlement sheet.  The December 21, 1998 Contract is also to the contrary.

12.    The Momenians state that to the extent they exist, the written appraisals identified in paragraph 12 speak for themselves and are the best evidence of what they say. In further response the Momenians note that an appraisal is simply one person's opinion of the fair market value of a particular property and that appraised "values" of a particular property can very widely.  The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

13.    The Momenians admit, on information and belief, that Plaintiffs borrowed $225,000 from Liberty National Bank in December 1998 and that Liberty National Bank placed a deed of trust on the properties conveyed.  Whether that deed of trust was primary, secondary or otherwise is a legal conclusion to which no response is required.  In further answer the Momenians state that

they understand, on information and belief, that the Liberty National deed of trust was released after Plaintiffs closed on the sale of 527-529 Property in 2002. The deed of trust identified in paragraph 13 speaks for itself and is the best evidence of what it says. The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

14.    The Momenians are unable to answer paragraph 14 because it is not clear what is being alleged. To the extent the paragraph states a legal conclusion no response is required. In further answer the Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations this paragraph and, therefore, deny same.

15.    The Momenians state that the Settlement Statement identified in paragraph15 speaks for itself and is the best evidence of what it says. The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

16.    The Momenians state that the Settlement Statement identified in paragraph 16 speaks for itself and is the best evidence of what it says. The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

17.    The Momenians state that the Settlement Statement identified in paragraph 17 speaks for itself and is the best evidence of what it says. The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

18.    Paragraph 18 asserts legal conclusions to which no response is required. In further answer, the Momenians state that the deeds of trust and releases identified in paragraph 18 speak for themselves and are the best evidence of what they say. The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

19.    Paragraph 19 asserts legal conclusions to which no response is required.  In addition, the Momenians are unable to respond given the conditional nature of the allegation, i.e. that the deed of trust is "purported," that it "allegedly" secured a note, and that the deed of trust was "supposedly created."   In further answer, the Momenians state that they are aware of the Note and Deed of Trust in favor of Mrs. Interdonato that was executed by the Plaintiffs in December 1998.  In further answer, the Momenians state that they and the Plaintiffs always understood amongst themselves that the Interdonato Note and Deed of Trust was the Momenians' obligation in that it related only to the 531 Property that was to be re-conveyed to the Momenians.  The Momenians state that the deed of trust, note and settlement statement identified in paragraph 19 speak for themselves and are the best evidence of what they say. The Momenians admit that the Plaintiffs, the Momenians, and the settlement attorney signed the settlement statement.  The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

20.    Paragraph 20 asserts legal conclusions to which no response is required.  The Momenians state that the deed of trust, note, and settlement statement identified in paragraph 20 speak for themselves and are the best evidence of what they say.  The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

21.    Paragraph 21 asserts legal conclusions to which no response is required.  In addition, the Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 21 and, therefore, deny same.

22.    Paragraph 22 asserts legal conclusions to which no response is required.  In addition, the Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 22 and, therefore, deny same.

23.    Paragraph 23 asserts legal conclusions to which no response is required.  In addition, the Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 23 and, therefore, deny same.

24.    The Momenians state that the deed of trust and note identified in paragraph 24 speak for themselves and are the best evidence of what they say.   In further answer the Momenians admit that at least until the Plaintiffs sought the release of the Interdonato deed of trust at the time of the sale of the 527-529 Property in 2002, Plaintiffs were never asked or expected to make the monthly payments and never did.  Between the Plaintiffs and the Momenians it was always understood that this was the Momenians' obligation in that it related to the 531 Property that was to be re-conveyed to the Momenians.

25.    Denied.

26.    The Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 26 and, therefore, deny same.

27.    Paragraph 27 asserts legal conclusions to which no response is required.  In addition, the Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 27 and, therefore, deny same.  In further answer the Momenians state that the Plaintiffs had in fact agreed to re-convey the 531 Property to them free and clear of the Liberty National Bank deed of trust.

28.    The Momenians state that the agreement identified in paragraph 28 speaks for itself and is the best evidence of what it says.   The Momenians admit that the Plaintiffs and the Momenians signed it on or about December 21, 1998.  The Momenians deny that the agreement was "Purported."

29.    The Momenians deny that the agreement was "Purported."   Paragraph 29 asserts legal conclusions to which no response is required.  The Momenians state that the agreement and settlement statement identified in paragraph 29 speak for themselves and are the best evidence of what they say.   The Momenians deny all remaining allegations in paragraph 29 not expressly admitted.

30.    The Momenians deny that the agreement was "Purported."   Paragraph 30 asserts legal conclusions to which no response is required.  The Momenians state that the agreements identified in paragraph 30 speak for themselves and are the best evidence of what they say.   The Momenians deny all remaining allegations in paragraph 30 not expressly admitted.

31.    The Momenians deny that the agreement was "Purported."   Paragraph 31 asserts legal conclusions to which no response is required.  The Momenians state that the agreement identified in paragraph 31 speaks for itself and is the best evidence of what it says.   The Momenians deny all remaining allegations in paragraph 30 not expressly admitted.

32.    Paragraph 32 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 32 not expressly admitted except that admit and acknowledge that they continued to exercise control and dominion over the 531 Property consistent with the agreements and the manifested intent of the parties.

33.    Denied.

34.    The Momenians admit that the parties jointly executed the agreement referred to as the 2001 Agreement and, on information and belief, understand that Plaintiffs signed it in or about March 2001.  The Momenians further state that the Plaintiffs were represented by counsel in connection with the 2001 Agreement and its negotiation and execution.  The documents identified in paragraph 34 speak for themselves and are the best evidence of what they say. The

Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations of paragraph 34 and, therefore, deny same.

35.    The Momenians state that the documents identified in paragraph 35 speak for themselves and are the best evidence of what they say.  The Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 35 and, therefore, deny same, except that they admit that the Lease was signed by the parties in 2001 and that the Note and Deed of Trust were signed by the Plaintiffs in 2001.

36.    The Momenians state that the documents identified in paragraph 36 speak for themselves and are the best evidence of what they say.  The Momenians deny all remaining allegations in paragraph 36 not expressly admitted.

37.    The Momenians state that the lease identified in paragraph 37 speaks for itself and is the best evidence of what it says.   The Momenians deny all remaining allegations in paragraph 37 not expressly admitted.

38.    The Momenians state that the documents identified in paragraph 38 speak for themselves and are the best evidence of what they say.  The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

39.    Paragraph 39 asserts legal conclusions to which no response is required.   The Momenians are without knowledge sufficient to admit or deny the remaining allegations in this paragraph, so they deny same.

40.    Paragraph 40 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 40.

41.    Paragraph 41 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 41.

42.    Paragraph 42 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 42.

43.    Paragraph 43 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 43.

44.    Paragraph 44 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 44, except that the Momenians admit that they have rented out the lower level of the 531 Property to the operators of a pizza business, that they have received rents of approximately $25,000 annually, and that Timeco, Incorporated, a corporation wholly-owned by the Momenians, entered into the lease and collected the rents.

45.    Paragraph 45 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 45.

46.    Paragraph 46 asserts legal conclusions to which no response is required.  The Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 46 and, therefore, deny same except that they admit that they indirectly became aware of the sale after the Purchasers had contracted to sell the 527-529 Property and prior to closing.

47.    Denied except the Momenians admit that the Plaintiffs paid Interdonato $50,000 to obtain release of the Interdonato Deed of Trust as to the 527-529 Property.

48.    Paragraph 48 asserts legal conclusions to which no response is required.  The Momenians state that the documents identified in paragraph 48 speak for themselves and are the best evidence of what they say. The Momenians deny all remaining allegations in paragraph 48 not expressly admitted.

49.     With respect to paragraph 49, the Momenians incorporate by reference their responses to the referenced paragraphs.

50.     The Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 50 and, therefore, deny same.

51.     The Momenians deny acting maliciously or telling the Buyer that "he still owned the 527-8 Property." In further answer, the Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations of paragraph 51 and, therefore, deny same.

52.     The Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 52 and, therefore, deny same, except to admit that they believe the agreements requiring the Plaintiffs to convey the 531 Property to them free and clear are valid and binding on Plaintiffs and Plaintiffs are in breach of same.

53.     Paragraph 53 asserts legal conclusions to which no response is required. The Momenians deny all remaining allegations in paragraph 53.

54.     Paragraph 54 asserts legal conclusions to which no response is required. The Momenians deny all remaining allegations in paragraph 54.

55.     Denied.

56.     With respect to paragraph 56, the Momenians incorporate by reference their responses to the referenced paragraphs.

57.     Denied.

58.     The Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 58 and, therefore, deny same, except to admit that they believe the agreements requiring the Plaintiffs to convey the 531 Property to them free

and clear are valid and binding on Plaintiffs and Plaintiffs are in breach of same and at various times the Momenians have advised others of this.

59.    The Momenians are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 59 and, therefore, deny same, except to admit that they believe the agreements requiring the Plaintiffs to convey the 531 Property to them free and clear are valid and binding on Plaintiffs and Plaintiffs are in breach of same and at various times the Momenians have advised others of this.

60.    The Momenians deny any statements were malicious and are without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations of paragraph 60 and, therefore, deny same.

61.    Denied.

62.    With respect to paragraph 62, the Momenians incorporate by reference their responses to the referenced paragraphs.

63.    Paragraph 63 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 63 except they admit they have properly exercised dominion and control over the 531 Property.

64.    Paragraph 64 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 64.

65.    Paragraph 65 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 65 except state that the Lease identified in paragraph 65 speaks for itself and is the best evidence of what it says.

66.    Paragraph 66 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 66 except they admit that they properly leased out

part of the 531 Property since December 1998 utilizing a wholly-owned corporate entity named Timeco, Incorporated.

67.    Denied.

68.    Denied except that they admit charging and receiving rents for the 531 Property since December 1998.

69.    Denied.

70.    Denied.

71.    With respect to paragraph 71, the Momenians incorporate by reference their responses to the referenced paragraphs.

72.    Paragraph 72 asserts legal conclusions to which no response is required. The Momenians deny all remaining allegations in paragraph 72.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    With respect to paragraph 77, the Momenians incorporate by reference their responses to the referenced paragraphs.

78.    Denied.

79.    Denied.

80.    Paragraph 80 asserts legal conclusions to which no response is required. The Momenians deny all remaining allegations in paragraph 80 except that they admit that the 2001 Agreement imposes obligations on Plaintiffs and the Momenians, it speaks for itself and is the best evidence of what it says.

81.    Denied.

82.    Denied.

83.    With respect to paragraph 83, the Momenians incorporate by reference their responses to the referenced paragraphs..

84.    Denied.

85.    Denied.

86.    Denied except that the documents identified speak for themselves and are the best evidence of what they say.

87.    Denied.

88.    Denied.

89.    Denied.

90.    Denied.

91.    Denied.

92.    Denied.

93.    Denied.

94.    Denied.

95.    Paragraph 95 asserts legal conclusions to which no response is required.  The Momenians deny all remaining allegations in paragraph 95 except that the Settlement Statement referenced speaks for itself and is the best evidence of what it says.

96.    Denied.

97.    Denied.

98.    Denied.

99.    Denied.

100. Denied.

101. The Momenians deny that Fikru Plaintiffs are entitled to any of the relief they seek in their prayers for relief.

102. The Momenians deny each and every allegation contained in the Complaint except as previously admitted, qualified or affirmatively alleged. The Momenians further deny all relief sought in the Complaint.

WHEREFORE, having fully answered the allegations contained in the Complaint, The Momenians hereby respectfully requests the following relief from this Honorable Court:

    1)     That the Complaint be dismissed with prejudice,

    2)     That the Momenians be awarded their costs incurred in defending this action including their reasonable attorney's fees, and

    3)     Any further relief that this Court deems appropriate.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Each count of the Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent they violate the applicable statute of frauds.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

Because one who seeks equity must first do equity, Plaintiffs' claims are barred by the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of accord and satisfaction.

## COUNTERCLAIM

Counter-Plaintiffs Houshang H. Momenian and Vida Momenian (the "Momenians"), by counsel, hereby assert this counterclaim against Counter-Defendants Emebet Fikru and Tesfay X. Guebre (jointly, the "Fikru Defendants"),  and as its counterclaim alleges as follows:

## JURISDICTION

1.  This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332 because this is a lawsuit among citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.  This Court has personal jurisdiction over each of the Counter-Defendants because each claims an interest in real property that is the subject of this action.

## BACKGROUND FACTS

3.  Counter-Plaintiffs Houshang H. Momenian and Vida Momenian are citizens of Maryland.

4.  Counter-Defendants Emebet Fikru and Tesfay X. Guebre are citizens of Virginia.

5.   Counter-Plaintiffs Houshang H. Momenian and Vida Momenian agreed to sell 527 and 529 8th Street, S.E., Washington, D.C. (the "527 Property") to the Fikru Defendants in 1998. This agreement is reflected in a written 1998 sales contract.

6.   For the two years prior to the sale of the 527 Property to the Fikru Defendants, the Fikru Defendants had been renting the 527 Property from the Momenians and operating it as a grocery store called Discount Foods.

7.   In connection with the sale of the 527 Property, the Fikru Defendants were not able to obtain complete and adequate financing to permit the transaction to close.  As an accommodation to the Fikru Defendants in order to permit them to obtain sufficient financing to purchase the 527 Property as planned, the Momenians agreed to convey 531 8th Street S.E. (the "531 Property") to the Fikru Defendants with no additional consideration solely to help facilitate the Fikru Defendants obtaining sufficient financing to permit them to purchase the 527 Property.

8.   It was always understood and agreed that the Fikru Defendants would re-convey the 531 Property back to the Momenians as soon as it was feasible to do so.

9.   To this end, a contract was drawn up on December 21, 1998 to reflect this understanding and the parties signed it (the "December 21 Agreement").

10. The parties understood and agreed that the transfer of the 531 Property was only to be temporary and only to facilitate financing for the Fikru Defendants.

11. The parties understood and agreed that the Momenians would continue to exercise complete dominion, power, and control over the 531 Property, be responsible for taxes, utility charges, and other costs of ownership for that property, and be entitled to retain any income earned on the property.

12. Since December 21, 1998, the Momenians have always exercised full dominion, power, and control over the 531 Property and acted as the owner of that property.

13. Since December 21, 1998, the Fikru Defendants never contested or challenged that dominion, power, and control.

14. In addition on or about December 21, 1998, the Fikru Defendants placed a $100,000 Deed of Trust on the 527 Property and the 531 Property in favor of Amelia T. Interdonato ("Interdonato"). It was understood at the time and since that this was to repay a debt the Momenians owed Interdonato.

15. Prior to the Fikru Defendants' sale of the 527 Property in 2002 which resulted in the partial release of this deed of trust, the Momenians had always paid this obligation.

16. Contrary to the parties' original understanding, the Fikru Defendants did not promptly re-convey the 531 Property to the Momenians. In addition, the Fikru Defendants sought to have the Class B Alcohol Beverage Control License ("ABC License") transferred from Vida Momenian to the Fikru Defendants.

17. Following negotiations between lawyers for each of the parties, on or about March 24, 2001, the parties entered into a contract to resolve these matters (the "2001 Contract").

18. All parties were represented by legal counsel in connection with the 2001 Contract.

19. The 2001 Contract is legal and binding on the parties in accordance with its terms. A copy of the 2001 Contract as executed by the parties is attached hereto as Exhibit A and incorporated herein by reference.

20. The 2001 Contract provided for Vida Momenian to assist and facilitate in the transfer of the ABC License issued in her name to the Fikru Defendants.

21. The 2001 Contract also provided for Momenians to execute a Bill of Sale for the assets of the Discount Food Market Business to the Fikru Defendants.

22. The 2001 Contract required that the Fikru Defendants convey the 531 Property to the Momenians free and clear of any liens or encumbrances and pay all costs of such conveyance no later than December 21, 2003.

23. The 2001 Contract also required that the Fikru Defendants to enter into a lease for the 531 Property to the Momenians at the rent of $10 per year with the Momenians to pay all costs in connection with the 531 Property including taxes and insurance.

24. The Fikru Defendants subsequently executed a $10 per year Lease as contemplated by the 2001 Contract.

25. The 2001 Contract also required that the Fikru Defendants permit the Momenians to "close the existing opening between the 531 Property and the [527 Property]."

26. The 2001 Contract also provided that in the event the Fikru Defendants failed to re-convey the 531 Property to the Momenians by December 21, 2003, the Fikru Defendants would be required to pay the Momenians liquidated damages of $400,000 secured by a Deed of Trust Note and a Deed of Trust encumbering the 531 Property and the 529 Property.

27. The Fikru Defendants subsequently executed the $400,000 Deed of Trust Note and Deed of Trust encumbering the 531 Property.

28. In the 2001 Contract the Fikru Defendants also granted to the Momenians a conditional Purchase Option to purchase the 527 Property, the 531 Property, and the Discount Food Market business for $225,000 in the event the Fikru Defendants failed to re-convey the 531 Property to the Momenians by December 21, 2003 (the "Option").

29. In breach of the 2001 Contract and the Purchase Option the Fikru Defendants granted the Momenians for purchase of the 527 Property, the 531 Property, and the Discount Food Market business set forth therein, the Fikru Defendants sold the 527 Property to the John Boyle Inner Vivos Trust ("Boyle") pursuant to a real estate purchase agreement dated on or about May 2, 2002, as amended on or about May 13, 2002, for a purchase price of approximately $480,000.

30. Because of the Purchase Option, the Fikru Defendants had no right to sell the 527 Property to Boyle without first obtaining the consent of the Momenians.

31. The 2002 sale of the 527 Property by the Fikru Defendants to Boyle was in breach of the 2001 Contract and the Purchase Option therein contained.

32. Following the sale of the 527 Property, the Fikru Defendants were preparing to finally re-convey the 531 Property back to the Momenians.

33. A meeting was scheduled for this purpose at which the Momenians anticipated repaying the $50,000 the Fikru defendants had paid to release the 527 Property from the Interdonato Deed of Trust.

34. The Fikru Defendants abruptly cancelled this re-conveyance meeting and have failed and refused to reschedule it.

35. The Momenians have been substantially damaged and injured as a result of the multiple breaches of contract by the Fikru Defendants.

## COUNT I

### Specific Performance of Obligation to Convey 531 Property

36. Paragraphs 1 through 35 are incorporated as if fully set forth herein.

37. The Fikru Defendants breached their contractual obligation to convey the 531 Property to them free and clear of all liens and encumbrances and without cost to the Momenians as the Fikru Defendants agreed in the 2001 Contract.

38. The Momenians have complied with the 2001 Contract.

39. The Momenians have been substantially damaged by this breach of contract.

40. All conditions precedent to the Fikru Defendants' contractual obligation to convey the 531 Property to the Momenians have been satisfied.

41. The Momenians have no adequate remedy at law for this breach.

42. The Momenians are entitled to specific performance of this contractual provision to convey the 531 Property to them.

43. This Court should order that the Fikru Defendants immediately convey the 531 Property to the Momenians free and clear of all liens and encumbrances and without cost to the Momenians.

## COUNT II

### Breach of 2001 Contract – Damages and Attorneys' Fees

44. Paragraphs 1 through 43 are incorporated as a fully set forth herein.

45. The Momenians have complied with the 2001 Contract.

46. The Momenians have been substantially damaged by the breach of contract by the Fikru Defendants.

47. All conditions precedent to the Fikru Defendants' obligations under the 2001 Contract have been satisfied.

48. Section 9 of the 2001 Contract provides that Fikru Defendants shall pay to the Momenians their expenses and attorneys' fees in the event the Fikru Defendants breach the agreement.

49. The Momenians have suffered substantial damages as a result of the multiple breaches of the 2001 Contract by the Fikru Defendants including, but not limited to, the Fikru Defendants' failure and refusal to timely re-convey the 531 Property to the Momenians, plus expenses and attorneys' fees.

50. The Momenians are entitled to recover such damages from the Fikru Defendants.

## COUNT III

### **Breach of Contract – Option to Repurchase – Damages and Attorneys' Fees**

51. Paragraphs 1 through 50 are incorporated as a fully set forth herein.

52. The 2002 sale of the 527 Property by the Fikru Defendants to Boyle breached the Purchase Option granted to the Momenians in the 2001 Contract.

53. The Momenians have complied with the 2001 Contract.

54. The Momenians have been substantially damaged by this breach of contract.

55. All conditions precedent to the Fikru Defendants' obligations under the Purchase Option of the 2001Contract have been satisfied.

56. Section 9 of the 2001 Contract provides that Fikru Defendants shall pay to the Momenians their expenses and attorneys' fees in the event the Fikru Defendants beach the agreement.

57. The Momenians have suffered substantial damages as a result of having their option to purchase the 527 Property and the 531 Property breached. Such damages include but are not limited to the difference between the fair market value of the properties and $225,000 – the exercise price, plus expenses and attorneys' fees.

58. The Momenians are entitled to recover such damages from the Fikru Defendants.

## COUNT IV

### Breach of Contract – Default on $400,000 Note – Equitable Relief

59. Paragraphs 1 through 58 are incorporated as a fully set forth herein.

60. On or about August 31, 2001 and in accordance with the 2001 Contract, the Fikru Defendants executed the Deed of Trust Promissory Note (the "Note"), a copy of which is attached as Exhibit B and incorporated by reference.

61. The Fikru Defendants also executed the Deed of Trust on the 531 Property securing their obligations under the Note ("$400,000 Deed of Trust"), a copy of which is attached as Exhibit C and incorporated by reference.

62. The Momenians are the holders of the Note.

63. The Note provides that it is due and payable in full on December 21, 2003.

64. The Note was to bear interest at eight percent (8%) per annum from August 31, 2001 until paid. Because the Note was not paid when due, in accordance with the terms of the Note, the Note bears interest at the rate of eighteen percent (18%) per annum since the default occurred on December 21, 2003.

65. The Note further provided that in the event of default the Fikru Defendants agree to pay reasonable attorneys' fees along with other costs of collection.

- 23 -

66. The Note provides that the holder shall look only to the property that is the subject of the $400,000 Deed of Trust for satisfaction of the Note.

67. The Momenians are entitled to enforce their rights under the Note against the Fikru Defendants in this action.

68. Because the Note requires the Momenians to look only to the 531 Property to collect the monies owed under the Note, the Momenians have no adequate remedy at law for the Fikru Defendants' default and breach of the Note.

If the Momenians do not obtain specific performance of the Fikru Defendants' obligation to re-convey the 531 Property to them as sought in Count I, then they are entitled to a court order requiring that the 531 Property be sold to satisfy the money owed to the Momenians under the Note and the $400,000 Deed of Trust.

## COUNT V

### Declaratory Judgment – 60 Year Lease

69. Paragraphs 1 through 68 are incorporated as a fully set forth herein.

70. In 2001, following the execution of the 2001 Agreement, the Fikru Defendants and the Momenians executed a Lease (the "Lease") of the 531 Property to the Momenians, a copy of which is attached as Exhibit D and incorporated by reference.

71. The Lease gives the Momenians the right to lease 531 Property for up to sixty (60) years.

72. The Lease provides that the Momenians shall pay $10 per year to the Fikru Defendants plus all costs including real estate taxes and insurance.

73. The Lease is valid and enforceable according to its terms.

74. In their Complaint the Fikru Defendants attack the legality and enforceability of the Lease.  Complaint at ¶¶ 37-45.

75. A dispute exists between the parties as to the validity and enforceability of the Lease.

76. The Momenians are entitled to a declaratory judgment that the Lease is valid and enforceable according to its terms.

**COUNT VI**

**<u>Unjust Enrichment</u>**

77. Paragraphs 1 through 76 are incorporated as a fully set forth herein.

78. In 1998, the Momenians conveyed a valuable asset to the Fikru Defendants – the 531 Property – based on the promise by the Fikru Defendants that they would promptly re-convey it to the Momenians free and clear of liens and encumbrances.

79. Subsequent to 1998, orally and in writing, the Fikru Defendants have confirmed that promise and repeatedly agreed to re-convey the Property to the Momenians.

80. The 531 Property was accepted by the Fikru Defendants and they benefited from the conveyance.

81. The transfer of the 531 Property to the Fikru Defendants occurred under circumstances such as reasonably notified them that the Momenians had not been paid for the Property and expected it to be re-conveyed promptly.

82. Despite receiving the benefit of the 531 Property the Fikru Defendants have failed and refused to re-convey it or pay the Momenians for it.

83. The Fikru Defendants having accepted and retained the benefits of the conveyance of the 531 Property have been unjustly enriched.

84. The Momenians are entitled to recover from the Fikru Defendants the fair market value of the 531 Property to compensate them for the Fikru Defendants' unjust enrichment.

## COUNT VII

### Promissory Estoppel/Detrimental Reliance

85. Paragraphs 1 through 83 are incorporated as if fully set forth herein.

86. The Fikru Defendants promised to re-covey the 531 Property to the Momenians as soon as it was possible to do so.

87. These promises were made with the intent of causing the Momenians to convey the 531 Property to them so that they could secure financing for the purchase of the 527 Property.

88. The Fikru Defendants promise reasonably induced The Momenians to rely on that promise in conveying the 531 Property to them for no additional consideration.

89. The Momenians relied upon the Fikru Defendants' promises to the Momenians' detriment.

90. The Fikru Defendants have failed to fulfill its promise to the Momenians by failing to re-convey the 531 Property to them, at least after they sold the 529 Property to Boyle in 2002..

WHEREFORE, the Counter-Plaintiffs Houshang H. Momenian and Vida Momenian prays that:

(1) a specific performance decree be entered in favor of Counter-Plaintiffs Houshang H. Momenian and Vida Momenian and against Counter-Defendants Emebet Fikru and Tesfay X. Guebre requiring that they fulfill their 2001 Contract by conveying the 531 Property to them free of liens, encumbrances, and without cost to the Momenians;

(2) a judgment be entered in favor of Counter-Plaintiffs Houshang H. Momenian and Vida Momenian and against Counter-Defendants Emebet Fikru and Tesfay X. Guebre for breach of the 2001 Contract in an amount to be proved at trial;

(3) a judgment be entered in favor of Counter-Plaintiffs Houshang H. Momenian and Vida Momenian and against Counter-Defendants Emebet Fikru and Tesfay X. Guebre for breach of the Purchase Option in an amount to be proved at trial;

(4) a decree be entered in favor of Counter-Plaintiffs Houshang H. Momenian and Vida Momenian and against Counter-Defendants Emebet Fikru and Tesfay X. Guebre requiring that the 531 Property be sold and from the proceeds the Momenians be paid all sums due under the Note including interest and attorneys' fees;

(5) a declaratory judgment be entered in favor of Counter-Plaintiffs Houshang H. Momenian and Vida Momenian and against Counter-Defendants Emebet Fikru and Tesfay X. Guebre declaring that the Lease is valid and enforceable according to its terms;

(6) a judgment be entered in favor of Counter-Plaintiffs Houshang H. Momenian and Vida Momenian and against Counter-Defendants Emebet Fikru and Tesfay X. Guebre for unjust enrichment in an amount to be proved at trial;

(7) a judgment be entered in favor of Counter-Plaintiffs Houshang H. Momenian and Vida Momenian and against Counter-Defendants Emebet Fikru and Tesfay X. Guebre for promissory estoppel in an amount to be proved at trial;

(8) a court order entered in favor of Counter-Plaintiffs Houshang H. Momenian and Vida Momenian and against Counter-Defendants Emebet Fikru and Tesfay X. Guebre for recovery of all of the Momenians' costs of this action, including reasonable attorneys' fees; and

(9) such other and further relief as this Court deems just.

Respectfully submitted,

Richard T. Rossier,  DC Bar # 364649
Marc E. Miller, DC Bar # 948372
Alex Menendez, DC Bar # MD023814
MCLEOD, WATKINSON & MILLER
One Massachusetts Ave., N.W., Suite 800
Washington, D.C.  20001
Telephone:  (202) 842-2345
Facsimile:  (202) 408-7763


## JURY DEMAND

Defendants/Counter-Plaintiffs Houshang H. Momenian and Vida Momenian, by counsel,

hereby demand a jury trial of all those matters that may be tried by a jury.

Richard T. Rossier,  DC Bar # 364649
Marc E. Miller, DC Bar # 948372
Alex Menendez, DC Bar # MD023814
MCLEOD, WATKINSON & MILLER
One Massachusetts Ave., N.W., Suite 800
Washington, D.C.  20001
Telephone:  (202) 842-2345
Facsimile:  (202) 408-7763