IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EMEBET FIKRU, et al. | ) ) ) ) ) | Case No. 1:05CV01162 |
| Plaintiffs/Counter-Defendants, | ) ) | Judge: James Robertson |
| v. | ) ) | Deck Type: General Civil |
| HOUSHANG H. MOMENIAN, et al. | ) ) | Date: Initial Conference |
| Defendants/Counter-Plaintiffs. | ) ) ) ) | |

| | | |
|---|---|---|
| HOUSHANG H. MOMENIAN, et al. | ) ) ) ) ) | Case No. 1:05CV01162 |
| Counter-Plaintiffs/Defendants, | ) ) | Judge: James Robertson |
| v. | ) ) | Deck Type: General Civil |
| EMEBET FIKRU, et al. | ) ) | Date: Initial Conference |
| Counter-Defendants/Plaintiffs. | ) ) ) | |

### DEFENDANTS/COUNTER-PLAINTIFFS HOUSHANG AND VIDA MOMENIAN'S OPPOSITION TO MOTION TO INTERVENE OF APPLICANT JOHN BOYLE TRUST

Defendants/Counter-Plaintiffs Houshang H. Momenian and Vida Momenian (the "Momenians"), by counsel, hereby oppose the Motion to Intervene of John Boyle Trust ("Applicant") because the Applicant does not satisfy the requirements for intervention as of right under Rule 24(a) and because a grant of permissive intervention under Rule 24(b) would not serve the ends of justice. These grounds are set forth in greater detail below:

1

I.  **INTRODUCTION**

The Momenians oppose the motion for intervention of the Applicant because the Applicant has not and cannot satisfy the requirements for intervention as of right and because the grant of permissive intervention would not serve the ends of justice. Indeed, the Applicant is not a proper party to intervene in this matter and its motion fails to assert a proper legal basis for intervention. In addition, granting the Applicant's motion to intervene in this case would result in interference with ongoing settlement negotiations between the parties and would only serve to delay the ultimate resolution of this matter. It also would unnecessarily complicate an already complex set of facts that underlie the pending claims.

Specifically, the Applicant seeks to intervene in this proceeding in order:

(i) to support Plaintiffs' Emebet Fikru and Tesfay Guebre ("Fikrus") request for a declaratory judgment that the Fikrus have good, valid and enforceable, fee-simple title to the real property that is the subject of this litigation;

(ii) to seek a declaratory judgment that the agreement entered into between Fikrus and Applicant for the purchase and sale of the subject real property is valid and enforceable according to its terms, and

(iii) to seek just and equitable reimbursement for certain expenditures made for the benefit of the subject real property and/or certain of the Defendants.

Each of the issues raised by the Applicant in its motion, memorandum in support, and proposed complaint falls far short of establishing the required direct, substantial and legally protectable interest in the subject matter of the litigation sufficient to qualify for

intervention as of right under Fed. R. Civ. P. 24(a). Moreover, the Applicant is not entitled to permissive intervention under Fed. R. Civ. P. 24(b) because its intervention would unduly delay the proceeding and prejudice the adjudication of the rights of the original parties.

## FACTUAL BACKGROUND

The key facts underlying Applicant's Motion are these. The Momenians agreed to sell 527 and 529 8th Street, S.E., Washington, D.C. (the "527 Property") to the Fikrus in 1998. For the two years prior to the sale of the 527 Property to the Fikrus, the Fikrus had been renting the 527 Property from the Momenians and operating it as a grocery store called Discount Foods. In connection with the sale of the 527 Property, the Fikrus were not able to obtain complete and adequate financing to permit the transaction to close. As an accommodation to the Fikrus in order to permit them to obtain sufficient financing to purchase the 527 Property as planned, the Momenians agreed to convey bare legal title to 531 8th Street S.E. (the "531 Property") to the Fikrus to facilitate the Fikrus' purchase of the 527 Property.

It was understood and agreed that the Fikrus would re-convey the 531 Property back to the Momenians as soon as the Fikrus had paid off their mortgage on the 527 Property. To this end, a contract was drawn up on December 21, 1998 to reflect this understanding and the parties signed it (the "1998 Agreement"). The parties understood and agreed that the transfer of the 531 Property was only to be temporary and only to facilitate financing for the Fikrus. The parties understood and agreed that the Momenians would continue to exercise full dominion, power, and control over the 531 Property, be

responsible for taxes, utility charges, and other costs of ownership for that property, and be entitled to retain any income earned from the 531 Property.

Since December 21, 1998, the Momenians have consistently exercised full dominion, power, and control over the 531 Property and acted as the owner of that property. Since December 21, 1998, the Fikrus never contested or challenged that dominion, power, and control. In addition on or about December 21, 1998, the Fikrus placed a $100,000 Deed of Trust on the 527 Property and the 531 Property in favor of defendant Amelia T. Interdonato ("Interdonato"). It was understood at the time and since that this was to repay a debt the Momenians owed Interdonato and her husband, co-defendant, Paul Interdonato.

Prior to the Fikrus' sale of the 527 Property in 2002 to the Applicant, which resulted in the partial release of this deed of trust, the Momenians had always paid this obligation. Contrary to the parties' original understanding, when the Fikrus paid of the bank loan on the 527 Property in 2002 in connection with the sale of the 527 Property to the Applicant, the Fikrus failed to promptly re-convey the 531 Property to the Momenians as they had repeatedly promised and contracted.

Following negotiations between lawyers for the Momenians and the Fikrus, on or about March 24, 2001, the parties entered into a contract to set forth in clear terms each party's obligations to the other (the "2001 Contract"). All parties were represented by legal counsel in connection with the negotiation and execution of the 2001 Contract. The 2001 Contract is legal and binding on the parties in accordance with its terms. The 2001 Contract, among other things, expressly required that the Fikrus re-convey the 531

Property to the Momenians no later than December 21, 2003 free and clear of any liens or encumbrances and pay all costs of such conveyance.

The 2001 Contract also required the Fikrus to lease for the 531 Property to the Momenians at the rent of $10 per year for a period of up to sixty (60) years with the Momenians to pay all costs in connection with the 531 Property including taxes and insurance. The Fikrus subsequently entered into the $10 per year Lease as contemplated by the 2001 Contract. That Lease expressly provided that the Fikrus could not sell the 531 Property without the advance written consent of the Momenians.

The 2001 Contract also required that the Fikrus permit the Momenians to "close the existing opening between the 531 Property and the [527 Property]." The 2001 Contract also provided that in the event the Fikrus failed to re-convey the 531 Property to the Momenians by December 21, 2003, the Fikrus would be required to pay the Momenians liquidated damages of $400,000 secured by a Deed of Trust Note and a Deed of Trust encumbering the 531 Property and the 529 Property. The Fikrus executed the $400,000 Deed of Trust Note and Deed of Trust.

In the 2001 Contract the Fikrus also granted to the Momenians a conditional Purchase Option to purchase the 527 Property, the 531 Property, and the Discount Food Market business for $225,000 in the event the Fikrus failed to re-convey the 531 Property to the Momenians by December 21, 2003 (the "Option").

In breach of the 2001 Contract and the Purchase Option the Fikrus granted the Momenians for purchase of the 527 Property, the 531 Property, and the Discount Food Market business set forth therein, the Fikrus attempted to sell the 527 Property to the Applicant pursuant to a real estate purchase agreement dated on or about May 2, 2002, as

5

amended on or about May 13, 2002, for a purchase price of approximately $480,000. Because of the Purchase Option, the Fikrus had no right to sell the 527 Property to Applicant. The 2002 sale of the 527 Property by the Fikrus to Applicant was in breach of the 2001 Contract and the Purchase Option therein contained.

## II. SUMMARY OF ARGUMENT

The central legal issue in the case is who is the legitimate owner of the 531 Property as between the Momenians and the Fikrus. All contractual agreements between the Fikrus and the Momenians discussed above were executed **before** any purported agreement that the Applicant claims to have entered into with the Fikrus with respect to the 531 Property. The Fikrus' agreements with the Momenians take precedence over any such agreements to which the Applicant may be a party. The Momenians have not entered into any agreement with the Applicant and are not parties to the purported agreement the Applicant entered into with the Fikrus.

The Applicant's claimed basis for intervention are entirely inadequate in that:

1)   Applicant does not have legal standing to support Fikrus' request for a declaratory judgment that the Fikrus have good, valid and enforceable, fee-simple title to the 531 property. That is an issue to which the Applicant is not a party and has no legally protectable interest. While for obvious reasons the Applicant may be seeking to encourage this Court to side with the Fikrus' claims in this respect, that encouragement does not constitute a legally protectable interest in the dispute. The Applicant simply does not have a legally protectable interest in the Fikrus' and the Momenians' competing claims for legal title to the 531 Property;

2) The Applicant's attempt to intervene is based primarily on the argument that it is seeking a declaratory judgment on the validity of its contract with the Fikrus for the Applicant's purchase of the 531 Property is misguided. Whether or not the agreement entered into between Fikrus and Applicant is valid only comes into play once the core issue in the case is decided, that is the dispute between the Momenians and the Fikrus regarding the ownership of the 531 Property. The Applicant recognizes that if the Momenians prevail on that issue, the Applicant has no claim to ownership of the 531 Property. Thus Applicants purported declaratory judgment claim is contingent in its entirety upon the outcome of the central legal issue in the case – the ownership of the 531 Property as between the Momenians and the Fikrus; and

3) The Applicant's claim that it is entitled to intervene to seek just and equitable reimbursement for certain expenditures made for the benefit of the 531 Property also does not constitute a substantial and legally protectable interest sufficient to support their claim for intervention as of right. This action will not impact the right of the Applicant to assert its subordinate and collateral claim for equitable reimbursement for expenditures made for the benefit of the 531 Property against either the Momenians or the Fikrus -- once it is determined whether the Momenians or the Fikrus are the proper legal and equitable owners of the 531 Property. Permitting the Applicant to intervene on this basis would only delay and complicate the resolution of the central issues in this case and

would be both unnecessary and prejudicial to the rights of the Momenians in this action.

### III. ARGUMENT

#### A. THE APPLICANT HAS NO RIGHT TO INTERVENE UNDER FED. R. CIV. P 24(A)

Intervention as of right is governed by Fed. R. Civ. P 24(a). That Rule sets out four conditions that must be met:

1. The application must be timely.
2. The applicant must have an interest relating to the property or transaction which is the subject of the action.
3. The applicant must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.
4. The applicant's interest must not be adequately represented by existing parties.

*Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060, 1074-1077 (D.C.Cir. 1998); *Kleissler v. United States Forest Service,* 157 F.3d 964, 969-971 (3rd Cir. 1998); *Forest Conservation Council v. United States Forest Service,* 66 F.3d 1489, 1493 (9th Cir. 1995). Under the first two conditions, the "interest" must be a legal one, not just an economic one. *Montana v. United States E.P.A.,* 137 F.3d 1135, 1142 (9th Cir. 1998); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361, 366 (3d Cir. 1995); *Washington Elec. Co-op v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir. 1990). Moreover, to establish an interest in the proceeding, the applicant for intervention must have an interest that is "**direct, substantial, and legally protectable**." *Washington Elec. Corp., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 96-97 (2d Cir. 1990) (*citing Donaldson v. United States,* 400 U.S. 517, 531, 27 L. Ed. 2d 580, 91 S. Ct. 534 (1971)(emphasis added). *Accord H.L. Hayden Co. of*

*New York, Inc. v. Siemens Medical Sys., Inc.*, 797 F.2d 85, 88 (2d Cir. 1986); *Restor-A-Dent Dental Labs, Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984); *Stewart v. Rubin,* 948 F. Supp. 1077, 1105 (D.D.C. 1996).

To that end, the interest prong of the test has been defined more as a pre-requisite rather than a determinative criterion for intervention. The D.C. Circuit has cautioned that the best approach to determining what constitutes a significantly protectable interest is to let the court's construction be guided by the policies behind the interest requirement. The interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process. *Reed v. Quigg*, 1986 U.S. Dist. LEXIS 25538 (D.D.C. 1986).

The D.C. Circuit has further explained that the proposed intervener's interest in the lawsuit can not be any potential interest, but must be a legally protectable interest. *Cleveland v. Nuclear Regulatory Comm'n*, 305 U.S. App. D.C. 162, 17 F.3d 1515, 1517 (D.C. Cir. 1994). Moreover, that interest must be "a direct and concrete interest that is accorded some degree of legal protection." *Diamond v. Charles*, 476 U.S. 54, 75 (1986) (O'Connor, J., concurring). As a practical matter, this means that the proposed intervener "would suffer harm from an adverse decision on the merits." *State v. FERC*, 298 U.S. App. D.C. 384, 980 F.2d 761, 763 (D.C. Cir. 1992). When the potential harm is contingent on intervening events the harm is too attenuated to justify intervention as of right under Fed. R. Civ. P. 24(a) because that harm is contingent on intervening events. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14 (D.D.C. 2002).

Here the Applicant does not have an interest in the central issue of this case – ownership of the 531 Property as between the Momenians and the Fikrus – but only a

contingent interest that would come into play only if the Fikrus prevail on the central issue. Thus, the Applicant fails the substantial and legally protectable interest test because they are no more than interested observers with respect to that issue. They are not party to any of the agreements that are at the core of that dispute and only have a later claim to have a right to purchase the 531 Property in the event this Court determines that the Fikrus are the rightful owners.

Moreover, the Applicant itself has not articulated a concrete legal right with respect to the 531 Property that is not entirely derived from the Fikrus' claims or that is not an equitable reimbursement claim that may be later asserted against the owner of the 531 Property once that owner is determined. The Applicant's understandable hope that the Fikrus will establish their ownership of the 531 Property so that the Applicant can then seek to enforce its agreement with the Fikrus does not constitute a substantial legally protectable interest but only a corollary contingent one. That the Applicant is rooting for the Fikrus to prevail regarding its 531 Property claims does not constitute a substantial and legally protectable interest in the subject matter of this case. It is not the purpose of intervention under Rule 24(a) to grant party status to those on the sidelines that wish to see one side or the other prevail in the case.

Moreover, even assuming that the Applicant satisfies the "interest" prong it must also show that the disposition of the action may impair its ability to protect that interest. Intervention is not necessary to avoid impairment. They only have a "rooting" interest in the core claim and that interest is fully and fairly represented by the Fikrus in this case.

In addition, to intervene as of right the Applicant must also show that its "interest" in the subject matter is not being adequately represented by existing parties.

In this case, the Fikrus' legal counsel -- who is accomplished, able and adept at advocating on behalf of the Fikrus with respect to what they claim to be their ownership of the 531 Property -- is more than adequate representation for what the Applicant claims to be its "interest" in this matter.

In short, the Applicant wholly fails to satisfy the requirements for Rule 24(a) intervention. Furthermore, any potential claimed harm that may befall the Applicant is contingent on a finding that the Momenians are the rightful owners of the 531 Property. But that "harm" is not something that the Applicant has a legal argument that would grant it party status in that dispute. It is on the sidelines, not on the playing field. Thus, its "potential harm is too attenuated to justify intervention as of right because that harm is contingent on intervening events." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14 (D.D.C. 2002).[1]

Additionally, the Applicant cannot establish any harm as a result of its effort to seek reimbursement for expenditures it claims to have made for the benefit of the 531 Property. The validity of that claim will not be affected by the resolution of the ownership issues in the instant action. The Applicant will be able to seek equitable reimbursement for any expenditure made for the benefit of the 531 Property from the Momenians if they prevail or from the Fikrus if they prevail.

---

[1] The contingent nature harm has been held insufficient to establish a right to intervene in other contexts. For example, courts have held potential harm caused by an indemnification agreements are too attenuated to justify intervention as of right because that harm is contingent on intervening events. *See, e.g., Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989); *Restor-A-Dent Dental Laboratories Inc. V. Certified Alloy Products, Inc.*, 725 F.2d 871, 875-76 (2d Cir. 1984). *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 25-26 (D.D.C. 2002). Similarly to the possibility of indemnification liability being too attenuated to justify mandatory intervention, the possibility that the Applicant in this action may be harmed if the Momenians prevail is too attenuated to justify mandatory intervention.

**B.  THE APPLICANT DOES NOT MEET THE REQUIREMENTS FOR PERMISSIVE INTERVENTION AS ITS INTERVENTION WILL CAUSE DELAY AND PREJUDICE**

Alternatively, the Applicant seeks permissive intervention under Fed. R. Civ. P. 24(b). Although permissive intervention is largely a matter of judicial discretion, that discretion is bounded by two rules:

1. The applicant must show an independent ground for jurisdiction. *Security Ins. Co. of Hartford v. Schipporeit, Inc.* 69 F.3d 1377, 1381 (7th Cir. 1995). *See also Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) (rule well established).

2. The intervention must not "unduly delay or prejudice the adjudication of the rights of the original parties." D.C. Super. Ct. Civ. R. 24(b); *District of Columbia v. Greater Washington Cent. Labor Council*, 442 A.2d 110 (D.C. 1982) (In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.)

In this case, the Applicant's application fails on the second condition. As stated above, the central legal issue is who owns the 531 Property as between the Momenians and the Fikrus. As a legal matter, that question has nothing to do with the Applicant. Allowing the Applicant to intervene would necessarily cause undue delay and prejudice to the adjudication of the main action. Once the instant action is resolved then the Applicant may have a cause of action with respect to its claim of reimbursement for expenses from the party who is determined to be the owner of the 531 Property. But there is no good reason to delay and prejudice the existing parties by inserting this subsidiary and derivative claim into the center of this already complex action. Indeed, the intervention by the Applicant would add claims to this matter that would have to await the resolution of other claims before they could be addressed. This would serve to disrupt any potential settlement negotiations that remain ongoing, delay subsequent

judicial proceedings, and prejudice the parties. *See e.g. Sokaogon Chippewa Comm. v. Babbitt*, 214 F.3d 941, 950 (7th Cir. 2000)(7th Circuit holding that potential interference with settlement negotiations constitutes "prejudice" that justifies denying permissive intervention.)

## IV.    CONCLUSION

For the reasons stated herein, the Momenians respectfully request that Applicant's Motion to Intervene be denied.

Respectfully submitted,

_____
Richard T. Rossier, DC Bar # 364649
Marc E. Miller, DC Bar # 948372
Alex Menendez, DC Bar # MD023814
MCLEOD, WATKINSON & MILLER
One Massachusetts Ave., N.W., Suite 800
Washington, D.C. 20001
Telephone: (202) 842-2345
Facsimile: (202) 408-7763

ND: 4840-7450-5216, Ver 1